Syllabus—Statement—Opinion.

MARY LASKOWSKI, in her own right and as Guardian of JOSEPH AND HEDWIG LASKOWSKI, dependents of WILLIAM LASKOWSKI employee deceased, claimants, p. b. r., *vs.* THE JESSUP AND MOORE PAPER COMPANY, a corporation of the State of Massachusetts, employer, d. b. a.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW; PROOF OF ACCIDENT ARISING IN COURSE OF EMPLOYMENT.

While claimant, under the Workmen's Compensation Law, has the burden of showing the accident was one arising out of and in the course of the employment, proof need not be by direct evidence; but it is enough, where more is impossible, to show existence of facts from which it can be reasonably and failry inferred that death was from such an accident.

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW; REMAND OF CASE TO BOARD FOR FURTHER EVIDENCE.

It being impossible from the evidence, as shown by the record on appeal from award under Workmen's Compensation Law by Industrial Accident Board, to determine whether the inferences drawn by it from the evidence were reasonable and fair, a photograph used by witnesses in explaining testimony not having been introduced, the case will be remanded for further evidence.

(*June* 20, 1919.)

RICE and HEISEL, J. J., sitting.

*Herbert H. Ward* (of *Ward, Gray and Neary*) for appellant.

*Philip L. Garrett* for appellee.

Superior Court for New Castle County, May Term, 1919.

APPEAL No. 107, March term, 1919, from Industrial Accident Board of the state of Delaware, awarding compensation to dependents of deceased employe, New Castle County Claim No. 5791 (April 8, 1919).

Proceeding before the Industrial Accident Board under the Delaware Workmen's Compensation Law (29 *Del. Laws* [1917] c. 233), by Mary Laskowski, in her own right and as guardian of dependent children, claimants, against the Jessup and Moore Paper Company, a corporation, employer, to obtain compensation for the death of her husband and father. The board awarded compensation, and the employer appeals. Case remanded to the board for further hearing.

RICE, J., delivering the opinion of the Court:

This is an appeal brought by the Jessup and Moore Paper Company, from the finding of the Industrial Accident Board of the

state of Delaware, in the case of Mary Laskowski, in her own right and as guardian of Joseph and Hedwig Laskowski, dependents of William Laskowski, claimant, against the Jessup and Moore Paper Company, a corporation of the state of Massachusetts, employer.

The Industrial Accident Board made an order requiring the Jessup and Moore Paper Company to pay the reasonable expenses of the last sickness and burial of William Laskowski, and to pay to Mary Laskowski compensation at the rate of $9 per week, and $100 to Philip L. Garrett, attorney for the plaintiff.

The Industrial Accident Board among other things, found that William Laskowski's principal duties at the Jessup and Moore Paper Company's plant were to look after four hydraulic wet machines, all located in a room called the "hydraulic room," and to oil a stationary engine, located in a room called the "engine room"; also to shut the engine off when it became too hot, and to perform such other work in connection with the engine as did not require the skill of a qualified stationary engineer; that the work inside this particular plant was peculiar, because on most of the jobs (Laskowski's included) the employes worked about half or three-quarters of an hour and then loafed about an equal length of time, that is, the work was intermittent, not steady. This condition prevailed on the day of December 24, 1918; that during what may be called "loafing periods" the employes of this particular plant were in the habit of playing pranks or jokes on each other, and engaged in what is commonly known as "horse-play." This practice was not confined to the noon hour, being carried on during regular work hours. The employment, therefore, brought together persons who commonly engaged in the practice of horse-play during regular hours of work. This practice was well known to the employer corporation and no prohibition of the same was laid upon the employes, nor was any attempt made to regulate or stop the practice. This condition prevailed on the day of December 24, 1918; that between the hours of 2 and 3 in the afternoon of the day of Decemebr 24, 1918, during a loafing period, William Laskowski and four or five fellow employes were gathered together in a room called the "machinery room." This room is adjacent both to the engine room and the hydraulic room. There is a win-

dow in the wall between the engine room and the machinery room. This window is about four feet from the floor, reaching up nearly to the ceiling, with about a dozen small panes of glass. A door leads from the machinery room into the hydraulic room; another door leading from the hydraulic room into the engine room. The preponderance of testimony is to the effect that the men in the group were not engaged in any horse-play, but were simply talking together. After about ten minutes had elapsed, William Laskowski left the group, saying to them that he was going to the engine room. He was seen to pass through the door leading into the hydraulic room. When William Laskowski left the group of men in the machinery room, the engine was running and the belt in motion as usual in the engine room; that about two minutes after William Laskowski left the group of men in the machinery room, they heard a crash of glass breaking, caused by one or more of the small panes of glass in the window being broken. Some of the men ran into the engine room looking for William Laskowski, but he was not there. Others ran down to the basement and found William Laskowski in an unconscious condition at a place almost directly under that part of the engine room where the belt disappears through the floor. William Laskowski was removed to the Delaware Hospital, where he died on December 27, 1918, as a result of personal injuries sustained in this accident; that situated in the engine room was a guard to keep the employes from walking down the belt. This guard was part iron and part wood. The wood part consisted of two boards or rails, about one-half inch thick and four or five inches wide, nailed to wooden posts, one rail above the other. The nails were driven from the outside through the boards into the posts. The rails ran parallel with the wall between the engine room and the machinery room and from three to four feet away from the same. The wood part of the guard was in front of the window in the wall. After taking William Laskowski from the basement, some of the men returned to the engine room. They found one end of one of the rails pulled away from the post to which it had been nailed. This end was resting upon the floor. the other end being fastened to the post as before. The testimony is conflicting as to whether the loose end was of the top or of the bottom rail, but the

preponderance of testimony is to the effect that it was the end of the top rail. The Industrial Accident Board concludes finally that William Laskowski while acting within the scope of his employment, came into contact with a rapidly moving belt, which hurled him with great force to a basement floor, thereby causing personal injuries resulting in his death.

[1] The appellant in this appeal contends that the burden is upon complainant to show that the injury complained of resulted from an accident arising out of and in the course of the employment of the person injured, and that this must be affirmatively shown, by direct evidence, and that it was not so shown by the evidence in this case.

While the burden must rest upon the plaintiff to show that the accident was one "arising out of and in the course of the employment," yet we are of the opinion that it is not required of the claimant to prove this by direct evidence. Direct evidence may not be had in all cases and it would be unreasonable to deny a claimant compensation in all cases where direct evidence of the cause of the accident cannot be obtained. The claimant would do all required of him if he should establish his claim by proving the existence of facts from which it could be reasonably and fairly inferred that the employe was killed by an accident arising out of and in the course of his employment.

[2] In the instant case the evidence, as shown by the record, is in such a state that we cannot determine that the inferences drawn by the board from the evidence were reasonable and fair. The board had a photograph of the engine room before them, which was used by the witnesses in explaining their testimony. This photograph was not introduced into evidence and was, therefore, properly not included in the record. It may have been of material assistance to the board in drawing their inferences and in reaching their conclusion, but this we are unable to determine. There is no evidence in the record with respect to the size of the engine room or the location of the engine in that room, or the space between the engine which it was the duty of the employe to oil and the wheel around which the belt ran, or whether the engine was protected from the driving wheel by the guard rail, thus having a tendency

to show the possibility or impossibility of the employe being caught in the belt while oiling the engine and carried along by the belt to the window which was broken and the wooden rail which was found loosened immediately after the accident. There is no evidence showing the distance from the floor of the engine room to the belt at the place where it passed the window and opposite the broken rail.

These are all matters concerning which it would be necessary for us to have information before it would be possible for us to determine whether the inference that the accident was one arising out of and in the course of the employment is a reasonable and fair one. As before stated, the photograph of the room, which was used at the hearing before the board, may have satisfactorily cleared up certain matters to the members of the board, which are not clear to us from the record.

As we are unable to determine from the record before us that the findings of the board were reasonable and fair inferences from the facts proved in the case, and as further evidence along the suggested lines would probably furnish the information necessary for a proper consideration of the case, we believe, under the circumstances, this is a proper case to remand to the board for further and additional evidence.

Therefore, it is ordered by the court that this cause and a copy of this opinion be remanded to the Industrial Accident Board for a rehearing under the provisions of the statute in such case made and provided with the direction that the board give an opportunity to the parties to introduce additional evidence with respect to the size of the engine room, the location of the engine in the room, the space between the engine and the wheel attached to the engine and around which the belt ran, and also the location of the guard rail between the engine and wheel, and the distance from the floor of the engine room to the belt, at the place where the belt passed the window which was broken and the guard rail which was loosened after the accident, and upon such other matters as may seem proper to the members of the Industrial Accident Board.

The case was reheard by the Industrial Accident Board and a new award made, which was accepted by the parties.